### 2235.  BATSON *et al. v.* HIGGINBOTHEM.

1. A suit to recover damages for trespass to land is not one "respecting titles to land," within the meaning of the constitution, conferring upon the superior court exclusive jurisdiction of suits "respecting titles to land," although the title to the land in question may be incidentally or collaterally involved.
2. Proof of a tortious invasion of one's property rights, where the injury inflicted is small and insignificant, will warrant a recovery of only nominal damages, and, in some cases, of punitive damages.

Complaint; from city court of LaGrange—Judge Harwell. October 2, 1907.

Argued December 21, 1909.—Decided June 14, 1910.

Rehearing denied July 5, 1910.

*B. H. Hill, A. H. Thompson,* for plaintiffs in error.

*Hatton Lovejoy, E. T. Moon,* contra.

HILL, C. J. Mrs. Higginbothem brought suit against W. C. Batson and three others in the city court of LaGrange, to recover damages for trespass on her real estate. She sued for $1,000 as general damages, and $500 as punitive damages, and the jury gave her a verdict for $350 as general damages, and $180 as punitive damages, against W. C. Batson and one of the other defendants, W. H. Huguley; a nonsuit having been granted as to the other two defendants. A motion for a new trial was made by the two defendants, which was overruled, and they excepted. The defendants filed also a demurrer to the petition, on the ground that the city court of LaGrange was without jurisdiction, as the suit was one respecting title to land, of which the superior court of the county had exclu-

sive jurisdiction, by the constitution of the State. The court over-ruled the demurrer, and exceptions pendente lite were filed.

The suit arose on the following facts, briefly stated: Plaintiff alleged, that she held title to a described lot of land in the city of West Point, Georgia, and that she had been in the quiet, peaceable, and uninterrupted possession of this land, under a fee-simple title, for a period of more than thirty years, having it inclosed by a fence for that length of time; that on September 11, 1908, it was entirely inclosed by a wire fence; that on that date the defendants went to it in person, with a force of hands, and instructed them to tear down the plaintiff's fence around the lot and take possession of a strip of the lot, 24 feet in width and 173 feet in length, for the purpose of opening a street or alley; and, in pursuance of these directions and instructions, they did tear down the fence, took possession of this strip of land from the lot, levelled it off, and converted it into a street or alley of the city. She alleges that these acts were without her consent, and constituted a wilful and malicious trespass.

The defense relied upon was that the land in question was not the property of the plaintiff and was not in her lawful possession; that it was a street or alley of the town of West Point, and had been used as a street or alley for many years; that the plaintiff, without authority, had taken possession of this street or alley and had placed a fence around it; that the city council, of which the defendants were members, composing the street committee of the council, had directed them to have the fence removed, as an obstruction to the public street or alley of the city, and that they had removed the fence and opened up the street or alley in pursuance of their authority as members of the street committee of the council, and in obedience to instructions given to them by the mayor and council of the city of West Point. There was no evidence as to the value of the strip of land in question, either before or after the alleged acts of trespass. It was shown that the value of the wire fence taken down, with the cost of restoring the same, was about $12.

The view that we entertain of this case makes it unnecessary to decide many of the numerous assignments of error raised by the record, and we will confine ourselves to a decision of the question of jurisdiction made by the demurrer to the petition, and of the question as to the character of damages recoverable, under the facts and the law applicable thereto.

1.   The suit is not one "respecting titles to land." The title to the land was not necessarily involved, but if involved, it was only incidental or collateral to the main issue.   The suit was brought to recover damages for trespass on real estate.  In the case of *Smith* v. *Bryan, 34 Ga.* 53, it is said that "cases respecting titles to land," in the intendment of the constitution are "cases in which the plaintiff asserts his title to the land in question, and depends for a recovery upon his maintenance of it; or to supply a link in the chain, wanting by reason of accident or other cause." The plaintiff specifically alleges in her petition that she is not suing to recover the land or any mesne profits thereof, but her suit is for damages resulting from a trespass to the real estate and injury to the possession.   This question has been repeatedly ruled by the Supreme Court, and the court was right in overruling the demurrer to the petition.  *Black* v. *Fritz, 98 Ga.* 32 (25 S. E. 88) ; *Robins* v. *McGehee, 127 Ga.* 431, 436 (56 S. E. 461) ; *Bivins* v. *Bivins, 37 Ga.* 347 ; *Moore* v. *O'Barr, 87 Ga.* 205 (13 S. E. 464).

2.   There is much conflict in the evidence on the issue as to whether the title to and possession of the strip of land in question was in the plaintiff, or whether it had been used by the city as a public street or alley.  But this question has been settled by the verdict of the jury in favor of the plaintiff, and any discussion of the evidence on this issue would be profitless.  Irrespective of this question, it may be conceded that the defendants, as officials of the city, had no right arbitrarily and summarily to take possession of the strip of land in question and to remove therefrom the fence which the plaintiff had put around it.  The law provides for an orderly procedure appropriate to such matters, and municipalities, as well as individuals, must adopt this procedure, and not assert their rights, even if they have any, vi et armis.  If in fact one or more of the defendants were guilty of the wrongs complained of, the plaintiff, as the owner of the premises described in her petition (and the jury, under the evidence, found that she was the owner), was entitled to recover damages as compensation for the injury done.  If special damages resulted from the tortious act, the plaintiff would be entitled to recover this class of damages, if she alleged and proved this.  General damages may be recovered without proof of any amount. Civil Code, §3910. This does not mean that the jury, in giving general damages for a tortious act, shall be permitted to

act arbitrarily in the matter and find any amount, but they must observe the cardinal rule of law, which is that damages are given only as compensation for the injury done. "If the injury be small, or the mitigating circumstances be strong, nominal damages only are given." Civil Code, §3905. In the case now under consideration there was no evidence of any actual injury to the land, or any diminution in value by reason of the trespass. The only actual injury shown by the evidence was the cost of restoring the fence which the defendants had removed from around the property. The property still belonged to the plaintiff. Neither her title nor her right to possession of the property was in the slightest affected by the tortious acts complained of, and there is nothing to prevent her from retaking possession, with or without legal procedure. She has a right to recover general damages even without proof of any amount of injury, but unless she proves some actual injury, or if the injury is small, these general damages should be only nominal in amount. As said by the Supreme Court in *Swift* v. *Broyles*, 115 *Ga.* 885 (42 S. E. 277, 58 L. R. A. 390) : "Proof of a tortious invasion of one's property rights can not, unless supplemented by evidence disclosing the extent of the loss thereby inflicted upon the injured party, afford a basis for the recovery by him of more than nominal damages." One whose property rights have been invaded by a tortious act can, without proof of any amount of damage, recover a nominal amount for the purpose of vindicating his right. If he seeks to recover more than this nominal amount as general damages, he must show by evidence some actual injury. Now, in this case, as has been stated, the only actual injury shown is the cost of restoring the fence. A verdict for $350, general damages, as compensation for this injury, would, under the law, be excessive. Under the facts and the law applicable thereto, this is a case for the recovery of nominal damages, as the jury believed that there had been an illegal invasion of property rights, although the actual damage resulting therefrom was insignificant. What would be the proper amount as nominal damages is not a question for this court, but is a question for the jury under all the facts and circumstances of the case, bearing in mind the definition given by the Supreme Court of what is meant by nominal damages,—"some small amount sufficient to cover and carry the costs." *Ransone* v. *Christian,* 56 *Ga.* 351 (6).

What we have said applies only to the question of damages compensatory in character. "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may find additional damages, either to deter the wrong doer, or as compensation for the wounded feelings of the plaintiff." Civil Code of 1895, § 3906. This character of damage is called punitive, and, if aggravating circumstances are proved, may be given, even where the actual injury is small. It is always exclusively a question for the jury to determine when such additional damages should be allowed, as well as the amount of such damages. The jury in this case found punitive damages in addition to general damages, and it is earnestly insisted that there was no evidence authorizing a finding of punitive damages. As there will be another trial, we do not care to consider and decide that question. We leave it for the determination of the jury, under the evidence that may be submitted on the subject at the second trial.

*Judgment reversed.*