## 28786. STRONG v. THE STATE.

INGRAM, Justice.

This appeal arises from the trial, conviction and sentencing of the appellant in the Superior Court of Forsyth County for the offenses of felony murder and armed robbery. Appellant received a sentence of life imprisonment for the offense of murder and five years imprisonment for armed robbery. The robbery and homicide involved in this case produced an earlier, separate trial and appeal in the case of *Conroy v. State,* 231 Ga. 472 (202 SE2d 398) (1973) in which this court reviewed and affirmed the conviction and life imprisonment sentence of Charles E. Conroy for murder

in the commission of armed robbery.

A detailed statement of the facts relating to the felony (robbery) murder of Robert Glenn Cagle, Sr., on June 22, 1972, can be found in the case of *Conroy v. State,* supra, and the facts proven at that trial will not be repeated here. A statement of the evidence at this trial necessary for consideration of the alleged legal errors asserted in this appeal will be included in this opinion.

Appellant's brief does not dispute proof of the occurrence of the armed robbery and murder of Robert Glenn Cagle, Sr., but vigorously denies the complicity of appellant in these crimes. The argument is made that: "The only witness that rendered any direct testimony that would tend to implicate the appellant was Kenneth Leroy Suttle who testified as to an alleged conspiracy between (Charles) Conroy and (appellant) Strong which included statements against the interests of the appellant, Strong. The defendant, Strong, in his unsworn statement to the court admitted knowing Suttle but denied any involvement in the indicted crimes." Appellant insists that "without the testimony of Suttle, there is absolutely and positively not one shred of incriminating testimony either directly or indirectly that would permit or authorize a conviction of the appellant."

Several enumerations of error complain the evidence is insufficient to establish appellant's guilt. Consequently, the evidence relating thereto must be reviewed to consider these contentions. The state contended that a conspiracy existed between Charles E. Conroy and appellant Jerry W. Strong to commit the armed robbery charged against appellant and that the death of Robert Glenn Cagle, Sr., occurred during the commission of the robbery. Kenneth Leroy Suttle testified on behalf of the state that he occupied an apartment in the Atlanta area during June, 1972, with appellant and Charles E. Conroy, and that on the evening of June 21, 1972, at the apartment, the appellant told Suttle in a conversation with him that appellant and Conroy "were planning an armed robbery." Suttle further testified that Conroy and appellant left the apartment in a 1968 or '69 Chevrolet convertible around 5:00 or 5:30 p.m. on June 22, 1972, and that he did not

see appellant again until appellant returned to the apartment around 10:00 or 10:30 a.m. on June 23, 1972, looking soiled with tattered clothing. Suttle further related that upon appellant's return to the apartment, the appellant asked about Charles Conroy and stated that appellant thought Conroy, whom he called "Fat Boy," might be mad at him for running out on him; that when appellant saw "that pair of feet sticking out and thought they were Mr. Conroy's he lit out on foot and went down through the woods across streams and . . . that he thought the dogs were so close he could almost feel their breath." Suttle also testified that Conroy finally came back to the apartment later that same day (June 23rd) around 5:30, 6:00 p.m. and said "we had to move." Suttle testified that Conroy had in his possession a blue duffle bag which he carried with him when the three of them left the apartment and went to a motel in the Atlanta area before Conroy and Strong took Suttle out of the state. Suttle's testimony also discloses that he observed the contents of the duffel bag and it contained "some currency in the form of several coins, some still in coin wrappers and there was bills, green currency along with it." Suttle also testified that, in the presence of appellant, Conroy told Suttle that he had killed Mr. Cagle and appellant Strong then said that "he wished he had been the one that had blown Cagle away."

Another witness for the state, Thomas E. Coleman, testified that he observed a blue and white Chevrolet convertible, bearing Mississippi license plate No. 25 C 71364 parked near his residence at an Atlanta area apartment house on June 21 and 22, 1972, and re-membered seeing Charles Conroy and another man together, with Conroy driving the Chevrolet convertible. An agent of the Georgia DOI testified he removed a .38 caliber Colt revolver from underneath the driver's seat of a 1968 blue Chevrolet convertible with a white top which was found abandoned on the evening of June 22nd near the scene of the crimes and that the automobile bore Mississippi license plate No. 25 C 71364. Billy Sweatman, an employee of Robert Glenn Cagle's service station and auto parts store, testified that a blue 1967 or 1968 Chevrolet convertible containing two men arrived at the

Cagle business around 7 p.m. on June 22nd and one of them was heavy set while the other was a slimmer man. Sweatman testified that he could identify Conroy as the heavier set man, but could not be sure that appellant was the slimmer man. He further related that, "the slimmer guy pulled a gun . . . and told us it's a robbery . . . lie down on the floor," and while he was on the floor, he saw the slimmer man fire his gun at Cagle. Sweatman also testified the two men took the cash box from Cagle and after the gun shots one of them ran out of the store leaving the other one inside the store. Sweatman stated that when the last man left he heard the tires squeal on the car outside and he then got up from the floor. Other witnesses for the state established Mr. Cagle's death as a result of the gun shot wounds he received during the robbery.

Another witness for the state, William R. Smith, said he was outside the store but nearby at the time and stated that he first saw a slim man with a gun in his hand running away from the Cagle business and the man "got over the fence and started down through the woods or pasture . . ."; that the heavy set man subsequently came out of the Cagle store with a "box and a gun in his hand." Paul Hare, also testifying on behalf of the state, said he saw a man with what the witness thought was a pistol in the man's hand running away from the direction of Mr. Cagle's business and across the road, into the woods, after the witness heard gun shots or something sounding like firecrackers at the Cagle store. Mrs. Ann F. Cagle, wife of the deceased victim, identified the .38 caliber Colt revolver found by the DOI agent, in the abandoned Chevrolet convertible, as being the handgun of her husband. A Deputy Sheriff of Forsyth County, involved in the search for the slim man seen leaving on foot from the Cagle store, testified that bloodhounds were used in the search for the man.

The appellant, Jerry W. Strong, in an unsworn statement to the jury, admitted coming to the Atlanta area with Kenneth Suttle and told the jury that he met Charles Conroy through Suttle after arriving in the Atlanta area in early June, 1972, but denied ever talking to Conroy about "robbing Mr. Cagle or anyone" and

denied that he murdered Cagle or participated in the armed robbery. He also told the jury he had been in trouble before but had "never been convicted of a murder case . . ."

The witness, Kenneth Suttle, whose testimony for the state connected appellant Strong with these crimes of armed robbery and murder, admitted on cross examination by appellant's counsel, without objection from the state, that he had a long history of arrest and criminal activity, including theft, forgery, bad checks, and an untried charge of possession of an illegal weapon.

The jury trying this case heard all of Suttle's testimony and must have considered his background in evaluating the credibility of the witness and his sworn account of the appellant's admitted participation in the armed robbery of the Cagle store which resulted in the death of Mr. Cagle. Appellant's counsel urges that this evidence is insufficient to convict the appellant. Admittedly, the evidence of appellant's guilt in this case is weaker than the evidence of Charles E. Conroy's guilt in that case. Nevertheless, we cannot hold it is insufficient as a matter of law. We are not authorized to substitute our opinion as to the weight of the evidence for the opinion of the trial jury and the judge presiding in the case. The jury, having heard and considered all of the evidence in the case, believed the state's witness, Kenneth Suttle, concerning appellant's complicity in the crimes charged against him. The trial judge had occasion not only to hear the witnesses and observe their demeanor during the trial but also reviewed the sufficiency of the evidence after the trial in connection with a motion for a new trial made by appellant. We find the evidence is legally sufficient and since the jury's verdict of guilty has the approval of the trial court, we shall not disturb it on appeal. *Killen v. State,* 50 Ga. 223 (1873); *Brown v. State,* 125 Ga. App. 300 (4) (187 SE2d 301) (1972). It matters not whether it was appellant or Charles Conroy who actually fired the gun during the robbery which resulted in Cagle's death. The act of one was the act of the other in the commission of the armed robbery and the ensuing death which resulted therefrom. See Code Ann. §§ 26-801, 26-802. As stated, though the

evidence here is not as substantial as in Charles Conroy's case, it did authorize the jury to conclude, as in Conroy's case, that this was a "calculated criminal enterprise consisting of conspiratorial armed robbery resulting in murder." See *Conroy v. State,* 231 Ga. 472, supra. Appellant's enumerations of error addressed to the sufficiency of the evidence, are without merit.

Two enumerations of error relate to the trial court's overruling of a motion for continuance and of appellant's request to dismiss his court appointed counsel. It appears that this was the first criminal case tried by defense counsel in the courts of this state. However, the record belies the assertion of counsel's incompetency and ineffectiveness. On the contrary, the record reveals defense counsel, in the trial and in this appeal, has served his client well. At the conclusion of the trial before the sentences were pronounced, the appellant told the court: "I believe the outcome of this trial was inevitable . . . If I had had money . . . I would have gone many other ways. I would have tried to go to the mental home, change of venue, I'm sure you know the various devious things . . ." The trial judge replied in response to appellant's complaints that "I've been in this business now nearly seven years and (defense counsel) did as good a job as I've ever seen many well trained qualified lawyers do, . . . I was glad to see him do such an excellent job." The record shows defense counsel graduated from Mercer University Law School in 1967 and had been a member of the Georgia Bar about five years at the time of trial. He served as an officer in the U. S. Marine Corps after graduation from law school and participated in a number of court martial cases. We find no abuse of the trial court's discretion in overruling the motion for continuance and in declining appellant's request to dismiss the appointed defense counsel. *Bolick v. State,* 127 Ga. App. 542 (2) (194 SE2d 302), and cits.

An additional enumeration of error asserts that the trial court erred in not granting defense counsel's motion for an in camera inspection of the district attorney's file prior to trial. Counsel was interested in discovering evidence favorable to the appellant about the background of the state's witness, Kenneth Suttle. While the

defendant in a criminal case has no right to inspect the prosecuting attorney's file before trial (e.g., see *Walker v. State,* 215 Ga. 128 (5) (109 SE2d 748)), the district attorney is obliged to disclose evidence that might be helpful to the defendant. See Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215), and United States v. Eley, 335 FSupp. 353. The record reveals that the district attorney in the present case stated in his place to the trial court that "everything the state has (on Witness Kenneth Suttle) is incorporated" in the record of the Charles Conroy trial, a copy of which was furnished to defense counsel in this case. In view of this response and the lengthy revelation of Kenneth Suttle's background of criminal activity adduced by defense counsel on cross examination, without objection from the state, we find no error in this enumeration.

Other enumerations of error contend that the appellant's character was placed in evidence by permitting Kenneth Suttle to testify he became acquainted with appellant while incarcerated in Texas, and that Suttle's entire testimony should have been stricken because he was shown to be an accomplice of Charles Conroy and appellant and his testimony implicating appellant was not corroborated by other evidence. We find no merit in these contentions. As to the complaint that appellant's character was placed in issue over his objection, we note that appellant himself told the jury he had been in trouble with the law previously but "had never been convicted of a murder case." The record also clearly reveals that the trial court sustained defense counsel's objection to the question and response regarding appellant's acquaintance with Suttle in a Texas jail. Although counsel also moved for a mistrial that was denied, the trial court specifically instructed the jury not to consider the excluded question and response. We find no abuse of discretion in these rulings. Appellant argues the testimony of Kenneth Suttle was inadmissible as it was not corroborated and he was shown to be an accomplice of appellant. *Lanier v. State,* 187 Ga. 534, 543 (1 SE2d 405), cited by appellant, states the correct rule that corroborating circumstances must connect the defendant with the crime independently of the testimony

of the accomplice. However, this rule is not applicable to the testimony of Kenneth Suttle in this case, as there is no evidence to show that he was a co-conspirator or accomplice in the crimes of robbery and murder charged against appellant and Charles E. Conroy. It was solely within the province of the jury to believe or not believe the testimony of Kenneth Suttle, in whole or in part. The jury had a right to believe his testimony even though it may not have been uncorroborated in focusing upon appellant as one of the perpetrators of the crimes. See *Solomon v. State,* 10 Ga. App. 469 (3) (73 SE 623).

Enumeration of error No. 9 asserts the trial court erred in stating to counsel in the presence of the jury that a witness is presumed to speak the truth. This remark came after the following combined question and statement by defense counsel to the witness, Kenneth Suttle: "Are you sure you haven't forgotten something between the ages of 18 and 20, some crimes that you committed? I want the truth, Mr. Suttle, for a change." Whereupon the district attorney interrupted and stated, "If your Honor, please . . .," and the trial judge replied: "He is presumed to speak the truth and that is an improper remark. Don't make it again." Perhaps it would have been more appropriate for the trial court simply to have sustained an objection to defense counsel's question and cautioned him not to ask an improper question, and not to argue with the witness. But we see no error in view of counsel's question and statement to the witness which clearly were inadmissible. Appellant's brief argues that the law provides all witnesses are presumed to speak the truth until the contrary shall have been made to appear. This identical instruction was included in the trial court's charge to the jury at the conclusion of the trial in addition to other ample and correct instructions regarding the credibility of the witnesses and their testimony. Thus, we find no merit in this enumeration of error, or in enumeration of error No. 12 complaining the trial court failed to charge the jury without request on impeachment of witnesses.

Appellant also contends the trial court "committed reversible error in sending the jury out of Forsyth County to spend the night." There is a certificate by the trial

judge before us stating that the jurors were required to remain together overnight throughout the trial. It states there were no facilities in Forsyth County to house the jurors and it was necessary to transport the jurors approximately 25 miles to Gainesville where they stayed overnight supervised by bailiffs of Forsyth County. The trial court had instructed the jury "when you leave the jury box you are not to discuss the case among yourselves nor permit anyone to discuss it within your presence and your hearing." *Hannah v. State,* 212 Ga. 313 (5) (92 SE2d 89) (1956), relied on by appellant, is not controlling in this case because here, unlike the circumstances disclosed in *Hannah,* there were no facilities of any kind in Forsyth County for the jury to stay during the overnight recess. We find no reversible error in this enumeration.

The appellant also contends the trial court erred in reading the indictments to the jury in charge by including therein the names of the grand jurors appearing thereon who had returned the indictments. Appellant argues this had the effect of bolstering the state's case in the minds of the trial jury. While reading the grand jurors' names with the other provisions of the indictments to the trial jury is not required under the law, no harmful error accrued in this instance as the trial court clearly instructed the jury that the indictments were not to be considered as evidence and that the fact that the grand jury returned the indictments did not constitute any inference of guilt. The trial judge also instructed the jury that the indictments were "merely the manner whereby the charges are brought here . . . for trial before you jurors by the introduction of testimony and evidence in your presence and hearing." In view of these instructions by the trial court, we conclude there is no merit in this enumeration of error.

In other enumerations of error, it is contended that the trial court erred in giving the jury additional instructions on the law of conspiracy upon request to do so by the jury; that the trial court incorrectly charged the definition of a felony to the jury in its original instructions; and, also erred in failing to give limiting instructions to the jury concerning the prior trial of Charles E. Conroy. We have reviewed the instructions

given by the trial court and found them to be correct statements of the law. The enumeration of error complaining of the court's failure to give limiting instructions to the jury concerning the prior trial of Charles E. Conroy presents no question for review. Although appellant's brief states the "record indicates mention on numerous occasions of the trial of Charles Edward Conroy," no reference is made to any such instance in the actual jury trial. Appellant's brief does not refer to any specific page of the transcript of evidence in support of this enumeration of error or show counsel made a proper objection on account thereof at the trial. In these circumstances, no question is presented for review by this court on appeal.

In summary, we have examined the enumerations of error dealing with the trial and conviction of appellant for the offenses charged against him and find them to be without merit. We proceed next to consider appellant's final two enumerations of error addressed solely to the sentencing phase of the trial. One of these asserts that the trial court erred in failing to charge that the offense of armed robbery was reducible to a misdemeanor. Code Ann. § 26-1902 provides that "a person commits armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon . . . A person convicted of armed robbery shall be punished by death or imprisonment for life, or by imprisonment for not less than one nor more than 20 years." Ga. L. 1968, pp. 1249, 1298; 1969, p. 810. These laws are the last expression of the General Assembly of Georgia as to the authorized punishment for armed robbery. Code Ann. § 26-3101 allows for reduction of felonies to misdemeanors in the judge's discretion, with recommendation of the jury in a jury case, where the maximum punishment for the crime is 10 years imprisonment. The maximum penalty for armed robbery is death or life imprisonment; therefore, armed robbery is not a reducible felony. See *Ezzard v. State,* 229 Ga. 465 (6) (192 SE2d 374) (1972), holding that Code Ann. § 26-3101 repealed by implication Code § 27-2501. The trial court properly instructed the jury in the sentencing phase of the trial on the authorized

punishment for armed robbery. No error appears.

The final enumeration of error for consideration in this appeal relates to an alleged prior felony conviction of the appellant in Illinois for burglary-larceny for which he presumably received a sentence of one to three years imprisonment. The state tendered this evidence and the trial court overruled defense counsel's objection that it was not properly authenticated in accordance with Code Ann. § 38-627. The clerk of the Illinois court certified to the authenticity of the record and the seal of the court is affixed to it. However, the document does not contain a certificate by a judge of that court, as required by the Georgia statute to be received in evidence. Code Ann. § 27-2534 states: "The jury . . . shall hear additional evidence in extenuation, mitigation and aggravation of punishment, including the *record* of any prior criminal convictions." To be admissible in evidence, a record of a prior criminal conviction from another state must be authenticated in accordance with Georgia law. See *Peeples v. Peeples,* 103 Ga. App. 462 (1) (119 SE2d 710).

It was error to admit the evidence of the Illinois offense as it was improperly authenticated. However, no harm resulted to appellant from its use in this case. The jury prescribed a sentence of life imprisonment for the offense of murder, the minimum punishment provided by law for this crime. The jury also fixed a sentence of five years imprisonment for the armed robbery offense. However, the jury did not provide that these sentences be served consecutively. "And unless the jury specifies that the sentences imposed are to run consecutively, then the law (Code Ann. § 27-2510) is that they shall run concurrently." *Wade v. State,* 231 Ga. 131, 134 (200 SE2d 271). The error here is harmless and does not require a new sentencing trial.

The convictions of the appellant for the offenses of murder and armed robbery, together with the concurrent sentences of life imprisonment and five years imprisonment, imposed for these offenses, will be affirmed.

*Judgment affirmed. All the Justices concur.*

Submitted April 5, 1974 — Decided May 21, 1974.

*Lipscomb & Manton, John P. Manton,* for appellant.
*C. B. Holcomb, District Attorney,* for appellee.