## 50300. BLI CONSTRUCTION COMPANY, INC. v. DEBARI et al.

ARGUED FEBRUARY 25, 1975 — DECIDED JUNE 13, 1975 —
REHEARING DENIED JULY 2, 1975 — 

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Warren C. Fortson,* for appellant.

*John K. Dunlap, M. David Merritt,* for appellees.

STOLZ, Judge.

■ This evidence does not demand a finding, as it did in *Dekle v. Todd,* 132 Ga. App. 156 (207 SE2d 654) that the plaintiff voluntarily assumed a known risk of injury in doing a dangerous and foolhardy act so as to preclude recovery. Under contract specifications the defendant was charged with taking proper safety precautions in connection with the work. It constructed three walls, two of which apparently were blown over during a severe thunderstorm. The third, which had withstood the storm and been standing for a week or two at the time, was then braced, a precaution which had been previously urged by the plaintiff; however, the bracing was applied to the east side only. Two weeks later the bracing was temporarily removed to allow installation of sheeting and wire mesh, and plaintiff was instructed to measure certain adjacent surfaces prior to installation of concrete work. On the morning in question there was testimony that the day was pleasant and calm, that no one was apprehensive about the wall, and that other workmen including the defendant's job superintendent, the head carpenter, the workmen laying the mesh and sheeting, and others had all worked in the immediate vicinity of the wall. Plaintiff did the required measuring, working on the east side, and after he finished walked away, but just at that moment the wall tilted and fell in his direction, inflicting severe injuries. Whether a sudden gust of wind or some other cause was responsible is a matter of conjecture. There was expert testimony that the defendant was negligent in building a long, free-standing wall sixteen or eighteen feet high, and defendant contends that as a matter of law, if this is so, the plaintiff assumed the risk of going in its vicinity while the bracing was removed. It was not, however, the plaintiff's duty to ascertain with certainty the stresses which the wall would bear — he knew it had been standing for several weeks and had withstood the storm which destroyed the others without bracing. He also knew that the day in question was clear and calm. If in fact a sudden gust of wind came up it must have come from the west and the plaintiff, walking away on the eastern side, testified he was unaware of it if such was the case. The term *assumption of risk* in strict fact is an

outgrowth of master-servant law; what we are really concerned about here is whether the danger of this wall collapsing was so obvious and patent that any person injured by going in its vicinity must be held, under Code § 105-603 to be so lacking in ordinary care to avoid the known negligence of the defendant as not to be entitled to recover. Here, neither the appellant nor a co-defendant introduced any evidence, and there is not an iota proffered by the plaintiff to suggest that the wall was in imminent danger of collapse or that any external force was at work to bring it down. Assumption of risk, as pointed out in *Yandle v. Alexander,* 116 Ga. App. 165, 167 (156 SE2d 504), if it may be applied to cases such as this, involves both a knowledge of the danger and an intelligent acquiescence in it. Considered either as thus denominated or as lack of ordinary care to avoid the negligence of another, the appellant's argument addresses itself to the jury, not to this court, and the trial judge properly denied the motion for directed verdict. On the other hand, the court did instruct the jury on the law of comparative negligence, and the jury may properly have applied this rule in returning a verdict substantially less than the amount sued for.

■ Under the evidence the trial judge erroneously submitted the issue of "punitive damages" to the jury. The statutory basis for allowing "punitive damages" is found in Code § 105-2002. "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff."

As stated in the statute, in order to bring this statute into operation there must be a tort where there are *aggravating circumstances,* either in the act or the *intention.* There is certainly no evidence in this record showing an intentional tort. "The additional damages provided for by this section cannot be imposed in any case unless there is wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Hughes v. Bivins,* 31 Ga. App. 198, 199 (3)

(121 SE 590) and cits. "Mere negligence, although gross, will not alone authorize the recovery of punitive damages." *Co-op Cab Co. v. Arnold,* 106 Ga. App. 160, 164 (126 SE2d 689); *Southern R. Co. v. O'Bryan,* 119 Ga. 147 (1) (45 SE 1000).

The facts in the case sub judice, as revealed by the record and recited hereinabove, simply do not bring this case within the contemplation of the statute authorizing "punitive damages." To hold otherwise would have the effect of making almost every tort case one in which the jury would be allowed to consider allowing damages under Code § 105-2002. In our judgment this would not be good policy or sound law. The judgment is affirmed provided the award for "punitive damages" is stricken within ten days of the receipt of the remittitur in the trial court; if it is not, the defendant is granted a new trial.

*Judgment affirmed in part and reversed in part. Bell, C. J., Pannell, P. J., Deen, P. J., Quillian, Clark and Marshall, JJ., concur. Evans and Webb, JJ., dissent.*

EVANS, Judge, dissenting.

Plaintiff received a verdict for $25,000 actual damages and for $10,000 punitive damages. Each member of this court affirms the verdict as to actual damages, but our only difference is as to whether punitive damages should have been awarded. Thus, punitive damages is the sole question for consideration.

Earlier, the defendant had erected two other quite similar "free-standing walls," from 16 to 18 feet in height, *and both of them had fallen.* The defendant was therefore fully aware that walls of this kind and height would not stand, but would fall, and might injure someone in the vicinity. Nevertheless, he built the third wall just as he had built the first two walls.

There was evidence to the effect that each of the three walls was erected completely contrary to sound building practice; that the walls were too long, too tall, and generally were erected in a shoddy, "penny-pinching" attempt to cut corners and save money.

The plaintiff and others remonstrated with defendant and actually pointed out to him that the walls were unstable and *should be braced,* but defendant

refused to do anything about it. When the first two walls fell down defendant then gave orders to brace the third wall, which was still standing, but then he gave orders which caused the bracing to be removed.

And then, despite defendant's knowledge that the first two walls had fallen; despite his knowledge that the third wall was defectively constructed; despite his knowledge that the third wall was in need of being braced, which he at first ordered, and then caused the braces to be removed, defendant's superintendent directed plaintiff to go to the wall and make certain measurements. The wall, just as had the other two walls, fell and plaintiff was injured.

How could a stronger case for punitive damages have been proven than was done here?

The majority opinion cites Code § 105-2002, which statute authorizes punitive damages if there are aggravating circumstances, either in the act or the intention, and the purpose of the damages is to deter the wrongdoer from repeating the trespass or for plaintiff's wounded feelings.

We now reach the vital question of what quantum of negligence authorizes punitive damages?

In *Southern R. Co. v. O'Bryan,* 119 Ga. 147 (1) (45 SE 1000), it is held that punitive damages are recoverable if defendant has acted with such an *entire want of care as to raise the presumption of conscious indifference to consequences.* Could a stronger case have been proven than the one we have here, showing defendant's *entire want of care and his conscious indifference to consequences?* He knew the three walls were built alike, that they were too long and too high. He knew they were defectively erected; that they should have been braced; that two of them had already fallen. Surely defendant was not one bit surprised when he learned the third wall had taken the same action as the first two walls and fallen. He would most likely have been astonished to learn that the third wall *had not fallen.* And in this conduct he showed an *entire want of care and a conscious indifference to consequences.* Why did he allow the braces removed when he knew they were necessary to prevent the wall from falling? Why did he build it contrary to sound building

practice? Why build it too long and too high? When and how was he ever going to learn how to erect a brick wall if falling of the first two walls did not serve to arouse his consciousness?

In *American Fidelity &c. Co. v. Farmer,* 77 Ga. App. 166 (3b) (48 SE2d 122), it is held that "wilful and intentional conduct is not essential" to the recovery of punitive damages.

Now let us address ourselves to a different principle of law as to punitive damages. A *simple act of negligence* (not a wilful, wanton, or gross act of negligence), may authorize punitive damages where it is repeated so as to indicate a reckless disregard of the consequences of the act. In 1915, when all railroads were powered by steam engines, burning coal and emitting sparks along the right of way, McElmurray sued C. & W. C. R. Co. as is reported in 16 Ga. App. 504 (85 SE 804). It was there recognized that in the ordinary operation of a railroad steam engine, fires are set out along the right of way and burn the inflammable weeds and dried growth existing there, and that setting out two or three fires in a period of two years might be expected and would not warrant punitive damages. But then the court holds at page 515: "While perhaps no aggravating circumstances would be inferred from the negligent setting out of two or three fires within a period of two years, yet, where the petition alleges . . . the negligent setting out of fifteen fires upon the farm of the petitioner at different times within that period, it seems to us that these *repeated and continued trespasses* might be sufficient for the jury to infer such a reckless disregard by the defendant of the legal rights of the plaintiff, and such a wanton indifference to consequences, as to entitle the plaintiff to recover punitive damages." (Emphasis supplied.)

And let it be emphasized that the mere setting of fire by a railroad is but simple negligence; the *repetition* is what makes it take on the character of negligence warranting punitive damages. Of course, setting fires was an almost necessary part of the operation of the old-fashioned steam locomotives; but the building of three defective brick walls, and leaving them unbraced, *each one of which fell to the ground,* is a far more serious matter

than setting out fires by a steam locomotive.

In *Batson v. Higginbotham*, 7 Ga. App. 835 (68 SE 455), and at page 839, in discussing the allowance of punitive damages, the court holds: "It [punitive damages] is always exclusively a *question for the jury* to determine when such additional damages should be allowed, as well as the amount of such damages." (Emphasis supplied.)

In the case we now have before us, the jury awarded punitive damages; there was ample evidence for the award; and it therefore was a question, not for the judges, but for the jury.

I respectfully dissent from the majority opinion.

I am authorized to state that Judge Webb joins in this dissent.