30163. BUTLER v. THE STATE.
30165. ROBINSON v. THE STATE.

UNDERCOFLER, Presiding Justice.

Calvin Butler, William "Billy" Mitchell, and James Alexander Robinson were indicted for the armed robbery of Mrs. James Carr. Butler and Robinson were separately tried, convicted and sentenced to life imprisonment. William "Billy" Mitchell also was indicted for the murder of Christopher Carr which occurred during the armed robbery. Mitchell pled guilty and was sentenced to death. His sentence was upheld by this court. *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900). These appeals are from the armed robbery convictions of Butler and Robinson.

The evidence shows that Mitchell had met Butler and Robinson soon after his completion of a five-year sentence in Florida for attempted robbery about three months prior to the robbery. The day before the robbery and murder the three of them decided to leave Jacksonville, Florida, and go to Los Angeles, California. They left Jacksonville in Mitchell's car. Butler testified that he did not have over $25 at the time. Robinson did not have any money but Butler owed him $10. Mitchell planned to get some money from relatives at Folkston, Georgia, en route but was unsuccessful. They drove on to Albany, Georgia, and went to the bus station to wash. Mitchell left the trio and returned a short time later and Butler testified that he said, "I got four dollars." At Robinson's trial, Robinson testified that when Mitchell rejoined them at the bus station he heard him tell Butler that "he had knocked some bitch in the mouth and got four dollars." Butler at that time had only about $3 left of his money and he suggested that they return to Jacksonville. Robinson told the officers that he knew that they did not have any money and were "busted." On their return to Jacksonville they stopped at a truck stop in Sylvester and spent the night in the car. The next morning Butler drove into the City of Sylvester. Mitchell was in the passenger side of the front seat and Robinson was in the back seat asleep. As they passed an IGA convenience store, Mitchell directed Butler to turn around at the next block, drive to the side of the store, and stop in the traffic lane facing the main road on the side of the building where there were no windows. Butler and Robinson both knew that Mitchell had a pistol in his pocket when he went into the store. Butler and Robinson both testified that Mitchell told them he was going into the store to get something to eat and they did not know that he had any intention of committing any crime. However, in his prior statement to the police officers, Butler did not tell them that Mitchell went into the store to get something to eat. Mitchell testified at both trials that neither Butler nor Robinson knew he planned to commit any crimes while in the store. Butler did not have a driver's license and he insisted that Robinson drive the vehicle in Sylvester which he did. Robinson took the driver's seat while the car was parked

at the store.

On Sunday morning, August 11, 1974, at 7:00, Mrs. James Carr and her fourteen-year-old son, Christopher Carr, had opened the IGA convenience grocery store for business in Sylvester, Worth County, Georgia. Mitchell walked into the store, pulled a pistol and pointed it at the Carrs, robbed Mrs. Carr of $15 from her purse, took $150 from the cash register, and forced them into the cooler at the back of the store. He threatened to rape Mrs. Carr, forced them to sit down in the cooler, shot the boy in the chest, shot Mrs. Carr in the back of her head and left the cooler to search for valuables. Seconds later Mitchell returned to the cooler and again shot both victims. Mrs. Carr was shot four times but managed to struggle to an adjoining room and telephone for assistance when Mitchell left the cooler.

William Monroe and his seventeen-year-old cousin, Derry Monroe, meanwhile parked their car in front of the store and entered it. William noticed the gold car in which Butler and Robinson were seated near the store. When the boys entered the store, Mitchell was leaning on the counter at the cash register. When the boys passed by Mitchell on their way to the meat counter, Mitchell came up behind them and forced them at gunpoint into the cooler. He robbed William of $6 but Derry told him he did not have any money. The boys saw Mrs. Carr bleeding and crying near the cooler with the telephone in her hand. Mrs. Carr and the boys were forced into the cooler with her son. Mitchell had a gun in each hand at that time. He had found one of the guns while searching the store after the victims were shot. Mitchell fired his gun at the Monroe boys but it misfired and he left the cooler. The victims remained in the cooler for about five minutes until the police arrived.

At 7:20 a.m. the radio dispatcher at the Sylvester Police Department received a call from the telephone operator advising him of Mrs. Carr's report of the robbery and shooting. Within two minutes of the receipt of the call Officer Gordon Young arrived at the store. Officer Young saw the gold car near the store and observed that it bore a Florida license plate, the front passenger side door was open, a young black man (later identified as Butler) was

standing beside it, and another heavily bearded black man (later identified as Robinson) was under the wheel. They both looked at him intently as he stopped the patrol car to enter the store, he saw the man who had been standing get into the car and he saw the car speed away heading north. The officer immediately entered the store, not seeing nor hearing anyone inside, but observing a bank bag on the floor, the drawer to the cash register open and a lady's purse open on the checkout counter, he immediately left the store and radioed a message from his patrol car for a lookout for the two men and the gold car with the Florida tag and told the dispatcher what he had discovered at the store. When he returned to the store he found Mrs. Carr and the two Monroe boys emerging from the cooler and saw Christopher Carr lying on the floor of the cooler. Christopher died later that day.

Larry McDonald, a former patrolman with the police department, heard the lookout message on his radio police scanner at his home and proceeded by car to the highway to watch for such a vehicle. The car came by at a speed of forty miles per hour going north and McDonald followed it, taking down its tag number, and observed that the two occupants met the broadcast description. He returned to his home and telephoned the information to the police dispatcher in Sylvester. At 7:25 a.m. the two occupants of the car, Butler and Robinson, were arrested at Ashburn, Georgia. Robinson was driving the vehicle at the time of apprehension. The officer who drove the gold vehicle back to Sylvester testified that it would run "hot and cut out" on him when it was driven about sixty miles per hour and he had to drive about forty to forty five miles per hour to Sylvester.

Butler and Robinson testified that the car belonged to Mitchell and that Mitchell had entered the store to get something to eat, had done the actual shooting, and that they were only waiting on him to return to his car. They said when they heard the shots inside the store Butler said, "That crazy fool has probably killed somebody," and they then left the scene because they did not want to be involved. They testified that they drove Mitchell's car about two blocks and turned around and came back to the scene to see what had happened. They saw Mitchell with a

brown paper bag in his hand walking along the sidewalk but Robinson testified that he motioned for them to leave him. This testimony of both appellants conflicts with that of William Monroe and Officer Young who testified that the car in which they were apprehended was stopped in the road by the store when they arrived at the scene.

Mitchell was captured by officers later that morning in Sylvester several blocks from the scene. He had the money he had stolen with him and had Mrs. Carr's black pistol which he found in the store. The murder weapon was found later where Mitchell had thrown it. *Held:*

1. The appellants contend that the general grounds of the motions for new trial are meritorious. We do not agree. While the recitation of the facts might appear to raise some question as to whether there was proof beyond a reasonable doubt of their participation in the robbery, yet, "the jury is the exclusive arbiter of the weight and credibility to be given the testimony of witnesses and, even in criminal cases, this court may only ascertain whether there is any evidence to support the verdict." *Hogan v. State,* 221 Ga. 9 (2) (142 SE2d 778); *Strong v. State,* 232 Ga. 294, 298 (206 SE2d 461). The general grounds of the motions for new trial are without merit.

2. The appellant Robinson contends that the trial court erred in allowing in evidence over his objection a color picture of the murder victim because it would inflame the jury. We do not agree.

The photograph was admissible in evidence. *Dixon v. State,* 231 Ga. 33 (2) (200 SE2d 138); *Hill v. State,* 211 Ga. 683 (88 SE2d 145); *Thompkins v. State,* 222 Ga. 420 (5) (151 SE2d 153); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840).

*Judgments affirmed. All the Justices concur, except Gunter and Hill, JJ., who dissent.*

SUBMITTED JULY 22, 1975 — DECIDED SEPTEMBER 11, 1975.

*Marion L. Bridges,* for appellants.

*W. J. Forehand, District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General, Lois F. Oakley, Staff Assistant Attorney General,*

for appellee.

HILL, Justice, dissenting.

This is an armed robbery case.

In Division 2, the court approves the admission into evidence of a photograph (in color) of the victim of a murder. None of the decisions cited by the court holds that in an armed robbery case, photographs of a murder victim are admissible in evidence.

In *Thompkins v. State,* 222 Ga. 420 (5) (151 SE2d 153), it was held that a photo of the dead victim was admissible in a case of robbery by force and intimidation. However, in that case the victim "went limp" while being held by the defendant. There the court conceded that the photographs of the deceased, taken a week after the crime, were highly prejudicial but relevant to show the location and conditions under which the robbery took place.

Here it is not contended that these defendants ever went into the store or ever saw the deceased. Here there were other photographs of the store, inside and outside.

The other decisions relied on as authority were photos of murder victims in murder cases, photos of robbery victims in robbery cases, or photos of rape victims in rape cases.

It might be argued that these defendants could have been charged with felony murder and thus the photograph of the victim would have been admissible. They were not so charged. Why we do not know, but will presume that the district attorney and grand jury acted properly in not indicting these defendants for felony murder. We should not approve the admission into evidence of this photograph on the basis that if they had been indicted for felony murder, the photo would have been admissible.

I must respectfully dissent. I am authorized to state that Justice Gunter joins in this dissent.