71343. ROSSVILLE APARTMENTS COMPANY et al.
v. BRITTON et al.
(342 SE2d 504)

BENHAM, Judge.
Appellants, the owners of the Rossville Apartments, and its managing agents, City Housing Corporation, were defendants in a personal injury action filed against them by appellees Charles and Velda Britton, who were tenants of the apartment complex. The Brittons alleged that their three-year-old daughter suffered an injury to her foot when a dumpster owned by the apartment complex fell on it. The child's parents sued on their own behalf for medical expenses incurred, loss of the child's services, and punitive damages. A jury returned a verdict of $10,000 actual damages and $10,000 punitive damages against appellants, who seek a reversal of the judgment.

1. Appellants first contend that the trial court erred in failing to sustain their motion for directed verdict at the close of the evidence on the punitive damages issue, since there was no material evidence of aggravating circumstances. We agree. OCGA § 51-12-5 permits a jury to award punitive (exemplary) damages "[i]n a tort action in which there are aggravating circumstances, in either the act or the intention . . ." It is well established that that language means such damages "cannot be imposed in any case unless there is wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. [Cit.]" *BLI Constr. Co. v. Debari*, 135 Ga. App. 299, 301 (217 SE2d 426) (1975).

At trial, the evidence developed as follows: The trash dumpsters appellants purchased for use at the apartment complex were metal containers on wheels, wider at the top than at the bottom. Appellants, on their own initiative, had additional braces welded onto the dumpsters to make them more stable; the braces made it impossible to turn

the dumpsters over from the front. From time to time the braces and wheels would break due to improper handling by the city dump trucks; when such damage occurred, appellants had the braces and wheels rewelded and repaired. The resident manager testified that she thought the dumpsters were "inherently dangerous because of their design," but there was no expert testimony to that effect. Moreover, there was no evidence that in the several years during which the dumpsters had been used at the complex, an injury had occurred involving any of the dumpsters, empty or full, braced or unbraced, until the one involving appellees' child.

Further testimony revealed that when the offending dumpster was initially damaged, appellants' maintenance main removed it from its concrete pad, placed it in an area from which children were restricted, turned it upside down to further stabalize it until it could be repaired, and later wired it shut to prevent its use as a waste receptacle. It took two men to maneuver the dumpster to the upside-down position; a city refuse truck subsequently turned it rightside up during a Friday garbage pickup. The maintenance man did not notice the dumpster's change of position until late that evening; when he did notice it, he did not think that in that position the dumpster, which weighed 1,500 pounds and had missing and broken wheels, could be moved by anyone who was the size of the three-year-old victim or that children would be playing in the area, even though he had seen children playing on dumpsters before. The child was injured on Sunday, two days later.

The child's mother testified that she had seen the dumpster in its state of disrepair and that it appeared "rickety"; that she knew, generally, that dumpsters were dangerous but she did not think this one was dangerous as far as her three-year-old daughter was concerned because she did not think her daughter would be in that area; and that she had been warned to stay away from dumpsters. The child's mother allowed her and her four-year-old sister to traverse the 110-unit apartment complex grounds on foot, accompanied only by her 10-year-old son, who was on his bicycle, to visit their grandparents who lived in another building in the complex. The child's mother was not aware that an accident had occurred until a neighbor's daughter brought the injured child home.

None of the previously mentioned characteristics on which punitive damages must be based is manifested by the conduct of the appellants in this case. While we deeply regret the fact that appellees' child was injured, there was no evidence of wilful misconduct, fraud, or any other factors to support a punitive damage award against appellants in any amount. Compare *Dempsey Bros. Dairies v. Blalock*, 173 Ga. App. 7 (1) (325 SE2d 410) (1984). We cannot allow appellants to be punished for failing to meet a higher standard of care than is

imposed on the child's own parents, who were aware of the possibility of danger. We reverse the judgment for punitive damages and remand the case to the trial court for that portion of the award to be stricken.

2. Our review of the trial transcript leads us to conclude that although the evidence was insufficient to support the punitive damage award, it was sufficient to allow the jury to decide the negligence issues.

The questions of fact remained whether the appellants were negligent in leaving the broken, upright dumpster in an area easily accessible to children and whether the child's parents were negligent in allowing her to cross the complex grounds without more responsible supervision, particularly in light of their knowledge of the dumpster's condition and location. Questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and this case was not so plain and indisputable as to justify invading the jury's province. *Duncan & Stancil v. Peden*, 159 Ga. App. 77, 79 (282 SE2d 708) (1981). There being some evidence to support the jury's verdict, we will uphold the judgment. Id.

3. Appellants complain that the trial court improperly charged the jury on the law of contributory and comparative negligence, a material element of their defense. We disagree. The record reflects that appellants orally requested the trial court to give its general charge on comparative negligence and that the trial court gave a complete charge on comparative and contributory negligence. Appellants' complaint that the trial court failed to charge the jury using the specific language set out in their appeal brief is without merit. *Slaughter v. Linder*, 122 Ga. App. 144 (176 SE2d 450) (1970).

4. Appellants also argue that the trial court erred in allowing appellees to exhibit photographs of the victim's foot and the foot itself by means of a live in-court demonstration, and in allowing testimony by appellees regarding the child's injuries and pain and suffering. They contend that the information was immaterial to the case and was calculated solely to create undue prejudice and sympathy in the jurors' minds.

Appellants have not cited us to, nor did we find, any testimony in the record to support what appellants describe as "constant and continuing introduction of testimony and demonstrative evidence by the plaintiffs and the exhibition of the injured child's foot . . ." The child did not testify, the display of her foot was brief and was relevant to the issue of medical expenses, and her parents did not describe her pain and suffering. The photographs were listed in the pre-trial order as part of appellees' evidence, and appellants expressed no objection until just before trial was to begin. Moreover, appellants submitted a request to charge the jury that the "physical condition of the minor child" could be considered, as well as "the nature of her continuing

physical impairment, if any," and the trial court charged the jury as requested. By their own actions, appellants waived any objection they might have had. See generally *J & F Car &c. Svc. v. Russell Corp.*, 166 Ga. App. 888 (305 SE2d 504) (1983). Therefore, we reject appellants' contentions as being without merit.

5. Error is also asserted in the trial court's admission of deposition testimony of Dr. Stohler. In his deposition, which was read into evidence at trial, the doctor admitted that he could not project whether or not future medical expenses for treatment of the child's injury would be necessary except for biannual examinations. Appellants contend that the admission of the testimony was prejudicial and speculative. We fail to see how such testimony could be harmful to appellants, and the only explanation offered by them was the amount of the verdict for actual damages, which was not contested here.

6. Finally, appellants assert error in the trial court's allowing appellees to introduce through a lay witness the medical records of a doctor who did not testify at trial. Our review of the record shows that the pre-trial order entered in the case included the records in question. In addition, at the time the records were offered, appellants' counsel acquiesced and requested that all of the medical records be introduced as stipulated. We find no error here. See *J & F Car &c. Svc.*, supra.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Banke, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 10, 1986.

*David W. Noblit*, for appellants.
*Larry D. Ruskaup, R. Stephen Tingle, Michael M. Raulston*, for appellees.