## 72269. WILSON et al. v. PICKELS.
(352 SE2d 208)

BENHAM, Judge.

Appellee Pickels filed suit against appellants, operators of Macon Mall, seeking damages for an injury she suffered in the mall's rest room facilities. A jury awarded appellee $50,000, and judgment was entered thereon. Appellants bring this appeal and enumerate as error

the trial court's denial of their motions for directed verdict and for judgment notwithstanding the verdict. We affirm.

The jury was authorized to find that when appellee, a college student, entered the Macon Mall rest room, the facility was so littered with debris that appellee had to step over piles of trash in order to gain access to a convenience stall. As she attempted to close the stall door, it tore from the hinge and fell to the floor with such force that it smashed appellee's fourth toe on her left foot and separated the bone in the toe. Water flooded the rest room floor and prevented appellee from removing her shoe in the rest room in order to examine the toe. After the incident, the stall door was removed from the rest room and stored in the maintenance department alongside other similar doors. There was at least one other door from this rest room that had been removed prior to removal of the offending door. This rest room had been the target of vandalism and it was common knowledge among mall owners that the vandalism consisted of destroying rest room stalls, ripping out toilets from the walls, and breaking sinks and other equipment.

The issues presented to the jury were whether the appellants had or should have had requisite knowledge of the defective condition of the door and whether the appellants were negligent in inspecting and maintaining the bathrooms. The evidence enunciated above was sufficient for the trial court to properly place the issues before the jury with proper instructions, and it was sufficient for the jury to have rendered a verdict favorable to appellee. The appellate court should not speculate as to what evidence the jury chose to believe or disbelieve. *Williams v. Stankowitz*, 149 Ga. App. 865 (256 SE2d 147) (1979). It is well settled that the question of notice is one for the jury (*Public Nat. Ins. Co. v. Wheat*, 100 Ga. App. 695 (9) (112 SE2d 194) (1959)), as are questions of negligence, diligence, contributory negligence, and proximate cause. *Rossville Apts. Co. v. Britton*, 178 Ga. App. 194 (6) (342 SE2d 504) (1986). The jury's function is to weigh the evidence and ascertain the credibility of the witnesses and of their testimony. *Scott v. Owens-Ill.*, 173 Ga. App. 19 (22) (325 SE2d 402) (1984).

On appeal, this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict, and after the verdict is approved by the trial judge, the evidence must be construed so as to uphold the verdict even where there are discrepancies. *Williams v. Stankowitz*, supra at 866. We will not weigh the evidence and in fact are precluded from doing so. *Strong v. State*, 232 Ga. 294, 298 (206 SE2d 461) (1974); *Dade v. Dade*, 213 Ga. 533 (1) (100 SE2d 181) (1957). In considering the motions for directed verdict and for judgment n.o.v., this court must view the evidence in the light most favorable to the party who secured

the jury verdict. *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 250 (329 SE2d 918) (1985).

" 'The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. OCGA § 9-11-50.' " *Nichols v. Purvis*, 178 Ga. App. 826 (1) (344 SE2d 692) (1986). "In reviewing the overruling of a motion for a directed verdict, the proper standard to be utilized by the appellate court is the 'any evidence' test. [Cits.]" *Speir v. Williams*, 146 Ga. App. 880 (1) (247 SE2d 549) (1978).

Applying the evidence enunciated above in this case, we find no error in the trial court's denial of appellants' motions for directed verdict and for judgment notwithstanding the verdict.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Carley, Sognier, and Pope, JJ., concur. Deen, P. J., Birdsong, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

We must focus here on the proximate cause of the injury and the evidence of it. For one thing, the evidence is conclusive that debris and water on the floor were not the cause. Nor was there any evidence that any other door had a defective hinge pin.

When Pickels entered one of the rest room stalls and as she pulled the stall door closed, the door separated from its upper hinge and its lower outside corner fell.

The suit alleged negligence "in hanging a heavy stall door up off of the floor in a manner insufficient to prevent it from falling upon invitees; in failing to maintain the rest room stall door in a manner so as to prevent injury to invitee[s]; in installing and hanging a heavy rest room stall door upon hardware which would not bear the weight of the door; in failing to inspect, repair and maintain the rest room stall door and in failing to take any precautions whatsoever to prevent injuries to invitees utilizing the rest rooms in the Macon Mall."

The appeal claims that the trial court erred in denying both the motions for directed verdict and the post-verdict motion "on the ground that there was no evidence of a defect of which the appellants had knowledge or which existed for such length of time as to constitute constructive knowledge and therefore the evidence failed to establish any negligence on the part of the appellants."

Applying the standard stated in OCGA § 9-11-50 and such cases as *Nichols v. Purvis*, 178 Ga. App. 826 (1) (344 SE2d 692) (1986), and viewing the evidence in the light most favorable to the jury verdict, *Pendley v. Pendley*, 251 Ga. 30, 31 (1) (302 SE2d 554) (1983), I must conclude that it is impossible to uphold the verdict and judgment.

Pickels testified that she had not looked at the stall door or had only glanced at it; she had not noticed anything peculiar about the door, did not know why the door fell, did not know whether there was any defect in the door that could have been seen, and had no reason to believe that mall personnel knew the door might fall off the hinge in the manner that it did.

The manager of the mall testified there were twenty-five or thirty people in the mall's maintenance and housekeeping staff; that vandalism was somewhat of a problem but that he did not recall any incident of vandals tearing out a rest room stall; that personnel checked the rest rooms every hour or every two hours depending on the amount of traffic in the mall; that the women's rest room generally would be inspected at least eight or ten times during the day; that each rest room received major cleaning before and after regular business hours; that as manager he regularly inspected the rest rooms; and that he was not aware of any problems with the rest room stall doors prior to the incident involving Pickels.

The mall's acting chief of security testified that he went to the scene of the injury right after it occurred; that the stall door in question was still attached by its bottom hinge; that he inspected the fallen door and that the upper hinge was in good shape but that the hinge pin was broken; that the hinge pin was located *inside* the assembled hinge; and that there was no way to determine if there was anything wrong with a hinge pin from looking at the hinge. A hinge and hinge pin of the same type as on the fallen door, which were in evidence, confirmed the security chief's testimony about the assemblage of the hinge, specifically that the hinge pin was *concealed* and therefore that a defect in the pin would not be observable by an inspection of the outside of the hinge.

Pickels was an invitee at the mall, so defendants owed her a duty to exercise ordinary care to keep the premises safe. "[A]n owner or occupier of premises breaches no duty to an invitee if by exercising ordinary care and diligence he could not have discovered and prevented the condition or circumstance that proximately caused the injury. [Cit.]" *Rhodes v. B. C. Moore & Sons*, 153 Ga. App. 106, 107 (1) (264 SE2d 500) (1980). An examination of plaintiff's claims in light of the evidence shows that mall personnel had neither actual nor constructive knowledge of the defect in the hinge pin because they could not have discovered or prevented the defect by the exercise of ordinary care and diligence.

a) There is absolutely no evidence that defendants were negligent in hanging the door in an insufficient manner or in installing the door upon hardware which would not bear its weight.

The only possible evidence for plaintiff would be an inference from the very fact that the door fell and injured her. But res ipsa

loquitur would not apply here "for the reason that mechanical devices, such as the one here involved, [the hinge], get out of working order, and sometimes become dangerous and cause injury without negligence on the part of anyone. Any other ruling would make the occupier of the premises an insurer." *Quick Shops v. Oldham*, 100 Ga. App. 551, 556 (1) (111 SE2d 920) (1959).

b) Nor was there any evidence to support the claims that defendants were negligent in failing to inspect, repair, and maintain the rest room stall door in a manner which would prevent injury to an invitee.

" 'As distinguished from defects in construction, where the rule is that the landlord is conclusively presumed to have knowledge thereof [cit.], mere defects in the maintenance of the premises must be shown to have existed for such a length of time, or under such circumstances as to actually or constructively put the owner of the building on notice thereof before he will be liable for injuries resulting therefrom. [Cits.]' [Cits.] . . ."

" '[T]here are two different classes of cases which may be based on constructive knowledge of a defect. The first is that type of case where the liability of the defendant is based on a duty to exercise reasonable care in inspecting and keeping the premises in a safe condition. [Cit.] To state a cause of action in that class of cases it is necessary that the petition state a period of time the dangerous condition has been allowed to exist. Without such an averment it would not be possible to determine whether the defendant had been afforded a reasonable time within which to inspect and remove the hazard . . . However, in the second type of case, that is, where it is alleged that an employee of the defendant was in the immediate area of the dangerous condition and could have easily seen the substance, it is not necessary to allege any specific length of time that the condition had existed.' " *Professional Bldg. v. Reagen*, 129 Ga. App. 183, 184 (199 SE2d 266) (1973).

Here there was no evidence that a defect in the hinge was present any time prior to plaintiff's injury which would afford defendants time to perform maintenance or repair. Also the evidence showed that any employee of the defendants in the immediate area of the defective hinge pin could not, by viewing, have detected the problem. Nor were there any similar prior incidents.

The assertion of negligent inspection must also fail. The mall personnel were shown to have made periodic inspections of the rest room and therefore were " 'chargeable with notice of any defects which should have been discovered by the exercise of ordinary care and diligence.' [Cits.]" *Palagano v. Georgian Terrace Hotel*, 123 Ga. App. 502, 505-506 (181 SE2d 512) (1971). While it is true that " '[i]f ordinary care requires an inspection, it requires that inspection even if it may be difficult.' " Id. But it is commercially impracticable and

unreasonable and should be beyond ordinary care as a matter of law to impose a duty on defendants, in an attempt to detect any defects, to disassemble the hinge mechanism on rest room stall doors, the only apparent way to have detected a defect in a hinge pin prior to any manifestation such as the door falling. Compare *Palagano*, supra, where there was evidence from which the jury could find that the instrumentality in question, a bed, "was defective and that such defect could or should have been discovered by a reasonable inspection." Id. at 506.

c) Lastly, the evidence at trial did not support plaintiff's allegation that defendants failed to take *any precautions whatsoever* to prevent injury to invitees using the mall's rest rooms.

Plaintiff had the burden of proving the alleged negligence on the part of the defendants; this she did not do under any of the theories of recovery advanced. Therefore, the judgment entered on the jury's verdict should not stand.

I am authorized to state that Presiding Judge Deen and Presiding Judge Birdsong join in this dissent.

DECIDED DECEMBER 5, 1986 —
REHEARING DENIED DECEMBER 18, 1986 —

*Hendley V. Napier, William H. Larsen,* for appellants.
*Walter H. New,* for appellee.