Donna Lynn **MORGAN**

v.

**MAR–BEL, INC., John Foster, Ted Parrish, Creativity, Inc. and Design Drafting, Inc.**

**Civ. A. No. C84–222A.**

United States District Court, N.D. Georgia, Atlanta Division.

July 29, 1985.

Thomas Henry Nickerson, Atlanta, Ga., Kenyon & Lusk, Anderson, S.C., for plaintiff.

Alan F. Herman, Atlanta, Ga., for defendants.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled matter is before the court on defendant Mar-Bel, Inc.'s motion for partial summary judgment. This is a products liability action for damages by the plaintiff for alleged injuries sustained while operating a formica slitting machine while employed at the Piedmont Moulding Co. During the operation of the cutting machine, plaintiff's left hand was allegedly caught in the machine, resulting in personal injuries. The Piedmont Moulding Co. acquired the machine from Mar-Bel, Inc. Plaintiff claims that the machine lacked adequate safety controls and warnings and

brings this action against this defendant, Mar-Bel, Inc., on theories of negligence, strict liability, breach of express warranty, and breach of implied warranty of merchantability. The plaintiff has withdrawn her claim for breach of express warranty. Defendant Mar-Bel, Inc.'s motion requests partial summary judgment on the claims of strict liability and breach of implied warranty.

## STRICT LIABILITY

In Georgia, the strict liability cause of action in tort is governed by statutory law. Georgia's O.C.G.A. § 51–1–11(b)(1) provides that a manufacturer of an item of personal property is strictly liable to any person who is injured by that item. Both parties agree that this statute, by its explicit terms, applies only to those persons or entities who *manufacture* and sell personal property. *See Ellis v. Rich's, Inc.*, 233 Ga. 573, 577–78, 212 S.E.2d 373 (1975). The basis for Mar-Bel, Inc.'s motion for summary judgment on this issue is its contention that it is not a manufacturer within the purview of this statute.

■ An analysis of Georgia case law reveals three situations in which an entity is deemed a manufacturer for the purposes of strict liability:

(a) an actual manufacturer or designer of the product; or

(b) a manufacturer of a component part which failed and caused the plaintiff injury; or

(c) an assembler of component parts who then sells the item as a single product under its own trade name.

*Rhodes v. Interstate Battery System of America, Inc.*, 722 F.2d 1517, 1520 (11th Cir.1984); *Giordano v. Ford Motor Co.*, 165 Ga.App. 644, 299 S.E.2d 897 (1983); *Pierce v. Liberty Furniture Co., Inc.*, 141 Ga.App. 175, 179, 233 S.E.2d 33 (1977).

■ Under the uncontroverted facts, Mar-Bel, Inc. does not fit within any of these categories. Mar-Bel, Inc. engaged Creativity, Inc. to construct a prototype of the laminate slitter for Mar-Bel, Inc. John Foster, Creativity, Inc. and/or Design Drafting Services designed the machine. The prototype was built by Creativity, Inc. from hand sketches supplied by John Foster and Design Drafting Services. Mar-Bel, Inc. supplied a component part to the machine but it is not contended that this component part malfunctioned so as to injure the plaintiff. Mar-Bel, Inc. inspected and tested the slitter while it was being assembled and offered suggestions for improvements. Mar-Bel, Inc. did not assemble any component parts into a single product nor did it sell or represent the slitter as its own product.

The slitter was kept in Mar-Bel, Inc.'s plant in Pinellas Park, Florida, where it was shown to the President of Piedmont Moulding Co., Jack Hubert, plaintiff's employer. The purpose of Mr. Hubert's visit to Mar-Bel, Inc.'s plant was to have Mar-Bel, Inc. manufacture a multiple cut formica slitter. Mr. Hubert noticed the machine involved in this lawsuit and inquired of Mr. Mouzakis, President of Mar-Bel, Inc., whether Piedmont Moulding Co. could use the machine during the time in which it was waiting for the machine it had ordered. Mr. Mouzakis' uncontroverted affidavit states that he informed Mr. Hubert that Mar-Bel, Inc. had not manufactured the machine and that the machine was not in production or available for sale. Mr. Mouzakis did, though, allow Mr. Hubert to use the machine. The machine was shipped to Georgia where it was installed and operated by Piedmont Moulding Co.

Categories (b) and (c) of the types of manufacturers under § 51–1–11(b)(1) are clearly inapplicable. There is no suggestion that any component part made by Mar-Bel, Inc. was defective. Neither do the facts indicate that Mar-Bel, Inc. ever held itself out to be the manufacturer of the slitter. Indeed, Mr. Hubert states in his affidavit that he was informed that the machine in question had been made *for* Mar-Bel, Inc. The court also concludes that category (a) is inapplicable. The designing and manufacturing of the slitter machine were either done by John Foster,

Design Drafting Services or Creativity, Inc. Any supervision or suggestions by Mar-Bel, Inc. were not substantial enough to equate them with the manufacturers or designers of the product. *Cf.* Vandall, *Architects' Liability in Georgia: A Special Statute of Limitations*, 14 Ga.B.J. 164, 165 (1978) (architects, engineers and designing supervisors not strictly liable).

The plaintiff, citing a Pennsylvania district court opinion, urges that "when a firm prescribes and controls the specifications and quality standards of an item constructed by another it is a manufacturer." *See Carter v. Joseph Bancroft & Sons Co.*, 360 F.Supp. 1103, 1107 (E.D.Pa.1973). To the court's knowledge, however, this principle has never been adopted by the Georgia courts. The plaintiff has not referred the court to any binding authority that would suggest Georgia has or would adopt this precept. Absent some indication that the Georgia courts would accept such an expansive reading of the term "manufacturer" this court will not do so, especially since § 51–1–11 is to be strictly construed. *Daniel v. American Optical Corp.*, 251 Ga. 166, 304 S.E.2d 383 (1983). The defendant Mar-Bel, Inc. is granted summary judgment on this issue.

## IMPLIED WARRANTY OF MERCHANTABILITY

Defendant also seeks partial summary judgment on the plaintiff's claim of implied warranty of merchantability asserting that the plaintiff does not have privity with Mar-Bel, Inc. to bring this claim against the defendant. Georgia law requires a showing of privity between the injured person and the seller of the product before a claim based upon an implied warranty may be brought. *Stewart v. Gainesville Glass Co., Inc.*, 131 Ga.App. 747, 751–52, 206 S.E.2d 857 (1974), *aff'd* 233 Ga. 578, 212 S.E.2d 377 (1975). The Georgia courts have repeatedly held that privity does not extend to employees of the purchaser. *Beam v. Omark Industries, Inc.*, 143 Ga. App. 142, 146, 237 S.E.2d 607 (1977); *Weaver v. Ralston Motor Hotel, Inc.*, 135 Ga.

App. 536, 539, 218 S.E.2d 260 (1975); *Starling v. Seaboard Coast Line Railroad Co.*, 533 F.Supp. 183, 192 (S.D.Ga.1982). The plaintiff does not dispute that the plaintiff's implied warranty claim is barred under Georgia law, but instead argues that Florida law controls the resolution of this issue. Florida does not require privity in actions similar to the present one. *See, e.g., Barfield v. Atlantic Coast Line Railroad Co.*, 197 So.2d 545 (Fla.2d Dist.Ct. App.1967).

In a diversity action, a federal court must apply the conflicts-of-law rules of the forum state in which it sits; in this case, Georgia. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electrical Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Nordson Corp. v. Plasschaert*, 674 F.2d 1371, 1374 (11th Cir.1982). Georgia allows the parties by agreement to choose which state's laws will govern a transaction, but as there is no indication that the parties have done so in this instance, the court must turn to Georgia's general conflicts-of-law rules to find an answer. O.C.G.A. § 11–1–105; *Crompton-Richmond Co., Inc., Factors v. Briggs*, 560 F.2d 1195, 1199 (5th Cir.1977).

Georgia follows the traditional rules of conflicts-of-laws. *See generally* Rees, Jr., *Choice of Law in Georgia: Time to Consider a Change?*, 34 Mer.L.Rev. 787, 788–89 (1983). "Under this system tort actions are adjudicated according to the law of the place where the wrong occurred, and contract actions are regulated by the law of the state where the contract was made when matters of execution, interpretation, or validity are at issue, and by the law of the state where it is to be performed when the issue is one concerning performance." *Wallace v. Harrison*, 166 Ga.App. 461, 462–63, 304 S.E.2d 487 (1983); *Manley v. Engram*, 755 F.2d 1463, 1466 (11th Cir. 1985) (choice of law for torts); *Residential Industrial Loan Co. v. Brown*, 559 F.2d 438, 440 (5th Cir.1977) (choice of law for contracts). However, the Georgia courts have not clearly indicated how to resolve a

conflicts-of-law problem involving an implied warranty of merchantability. Plaintiff characterizes this claim as one based on a contract such that *lex loci contractus* (Florida law) controls. Defendant argues that *lex loci delicti* (Georgia law) should be applied. Neither party has directed the court to any Georgia authority conclusively deciding the question.

The implied warranty of merchantability is raised by statute. *Stewart, supra* 131 Ga.App. at 752, 206 S.E.2d 857. *See* O.C. G.A. § 11–2–314. It is unclear exactly where it fits on the tort v. contract scale. *Compare Chaffin v. Atlanta Coca-Cola Bottling Co.*, 127 Ga.App. 619, 194 S.E.2d 513 (1972) (contractual basis) *with Bookholt v. General Motors Corp.*, 215 Ga. 391, 393–94, 110 S.E.2d 642 (1959) (liability not contractual). In *Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010 (5th Cir.1969), *reh'g denied*, 424 F.2d 549 (1970), the Fifth Circuit confronted this question and applied old Georgia Code Annotated § 109A–1–105 [O.C.G.A. § 11–1–105] to hold that a federal court should not look to the place of the sale (*lex loci contractus*) but to the place of the injury (*lex loci delicti*). *Id.* at 1016. Although mentioning the contractual nature of a warranty claim, *id.* at 1015, the court nevertheless reasoned "that a breach of warranty involving an injury is analogous to a tort action" such that "the orthodox 'place of injury' rule should apply to warranties." *Id.* at 1016 n. 9. Georgia law was therefore applied.

In a Memorandum Decision on the petition for rehearing, Judge Rives disagreed with the conflicts-of-law analysis of the original decision. He believed that Georgia's general conflicts-of-laws rules rather than Code Section 109A–1–105 should have been used. Analyzing the question under the general rules, the judge nevertheless concluded that Georgia's tort conflicts rule was appropriate. 424 F.2d at 550–51. Georgia law was again applied. Similarly, the Eleventh Circuit in dicta discussed only Georgia's tort rules when it stated that Georgia's choice of law principles would dictate the application of Georgia law to a breach of warranty theory. *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 620–22 (11th Cir. 1983). *See also* F. Eldridge, *Products Liability The Law in Ga.*, § 4–2, at 81 (1976) (citing various federal cases for the same conclusion).

■ This court also concludes that Georgia law controls this claim. In the absence of any Georgia authority specifically holding that conflicts-of-law issues involving an implied warranty of merchantability should be resolved under *lex loci contractus* as opposed to *lex loci delicti* principles, this court is obligated to follow the Circuit's interpretations. Further, under the facts of this case, it is appropriate to apply tort-based theories of analysis. There is a colorable argument that no contract exists as to this cutting machine as it is asserted to have been a gratuitous loan from Mar-Bel, Inc. to Piedmont Moulding Co. independent of any contract between the two companies. The presidents of both companies stated in affidavits that no warranties or representations were made by Mar-Bel, Inc. about the equipment. Labeling this claim as one based on personal injury not only more closely resembles the facts of the case, but also is in keeping with the deeply ingrained public policy in Georgia of maintaining the privity requirement before a party can bring a warranty claim.

Applying Georgia law, the court finds that the plaintiff fails to satisfy the privity requirement to maintain a breach of implied warranty of merchantability cause of action. Accordingly, defendant Mar-Bel, Inc.'s motion for summary judgment on this issue is also granted.