### Ronald FREEMAN, Plaintiff,

v.

### UNITED CITIES PROPANE GAS OF GEORGIA, INC., United Cities Gas Company, Mobil Oil Corporation, Petrolane, Inc., and Petrolane Gas Service Limited Partnership, Defendants.

Civ. No. 89–150–ALB/AMER(DF).

United States District Court,
M.D. Georgia,
Albany/Americus Division.

Nov. 24, 1992.

*Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

Walter H. Burt, III, William Lawson Swan, Albany, GA, Louis C. Accurso, Kansas City, MO, for plaintiff.

Julius M. Hulsey, Gainesville, GA, Robert B. Langstaff, Albany, GA, Larry B. Lipe, Tulsa, OK, Carr G. Dodson, Jerry A. Lumley, Bradley J. Survant, Macon, GA, Robert Edgar Campbell, Albany, GA, Bernard J. Casey, Douglas K. Spaulding, Washington, DC, for defendants.

FITZPATRICK, District Judge.

Before the Court are various motions for summary judgment and partial summary judgment filed by the Defendants. There are basically three subjects covered by the motions: (1) The learned or informed intermediary defense; (2) Strict liability for manufacturers; and (3) Punitive damages. Defendants have moved individually for summary judgment on each of these issues.[1]

## FACTS

### A. *The Explosion*

Mr. Freeman ("Plaintiff") lived in a trailer in Colquitt County, Georgia. His only propane appliance was the stove on which he cooked. This was fueled by two portable propane cylinders that he filled at the facility owned and operated by United Cities Propane Gas of Georgia, Inc. ("UCPG"). Before the explosion that is the subject of this litigation, he had last bought propane from UCPG around the 17th of January.

In the early morning hours of February 20, 1989, Mr. Freeman awoke having difficulty breathing. He smelled nothing unusual in his trailer. Mr. Freeman reached for his cigarettes and lighter on his way outdoors to try and get some fresh air. As he reached the door, he attempted to light

---

1. Except the United Cities defendants on the learned intermediary defense.

his cigarette. The trailer exploded and Mr. Freeman was thrown out of the trailer and against a tree. He was badly burned by the fireball and explosion.

### B. Retailers, Pipelines, Odorants and Suppliers

UCPG is a retailer of propane gas to the general public. It purchases its propane from various suppliers and manufacturers that ship propane on the Dixie Pipeline. Between January 1, 1988, to January 24, 1989, all of the propane purchased by UCPG was bought from shippers on the Dixie Pipeline.[2]

Dixie has agreements with shippers on its pipeline that require the shipper to select an odorant to be added to the odorless propane before the gas is delivered to the retailer. In the absence of a specific direction from the shipper, Dixie will automatically add 1.5 pounds of methyl mercaptan per 10,000 gallons of propane.

Ethyl mercaptan is a chemical whose only purpose is to make propane smell badly. It is recognized by the propane industry as a generally effective odorant for propane. Georgia law requires some type of odorant be added to propane as a warning device; however, Georgia does not require the use of ethyl mercaptan.

UCPG had purchase agreements for propane gas with both Mobil and Petrolane. Both of these suppliers shipped their propane on the Dixie Pipeline. The purchase agreement between Petrolane and UCPG indicates that Petrolane purchased propane from others and then resold it to UCPG. There is no similar provision in the Mobil/UCPG purchase agreements. However, neither Mobil nor Petrolane marketed its propane to UCPG under a trade name.

### C. Odorization of Propane and Warnings

Propane is an odorless gas. It is highly flammable and heavier than air. As a safety precaution, suppliers and manufacturers are required by Georgia Law to add a malodorant to the gas before resale to the consumer. In this case, the malodorant was ethyl mercaptan. State regulation requires enough malodorant be added to the propane to make the gas detectable, at nose level, in a concentration that is $\frac{1}{5}$ the amount that is dangerous, i.e., capable of exploding. By custom this means that at least one pound of ethyl mercaptan is added to every 10,000 gallons of propane.

Ethyl mercaptan is subject to various chemical processes that can cause it to lose its distinctive odor. Together these processes are referred to as "odor fade." In effect the ethyl mercaptan reacts with its surroundings, e.g., rust in the container, oxygen or moisture in the environment, causing the chemical to lose its strong, warning odor. If "odor fade" occurs the propane is not detectible at nose level, as required by state regulation.

Plaintiff's various claims for strict liability, negligence and breach of implied warranty, all stem from the Defendants alleged failure to warn him about the dangers inherent in the use of propane and negligence in selecting ethyl mercaptan as an odorant. Plaintiff alleges that all of the Defendants knew about the risk that ethyl mercaptan can lose its strong warning smell. Plaintiff goes on to allege that because of the risk of "odor fade" and because propane is a highly flammable substance, the producers and suppliers had a duty to warn consumers of the risks and dangers of using propane. He concludes that without the warning, and given the hidden danger of "odor fade", the propane that Plaintiff bought was defective.

### SUMMARY JUDGMENT STANDARD

■ The movant for summary judgment has the initial burden of showing the trial court that no genuine issues of material fact exist. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Only if the moving party satisfies this threshold does the opposing party have an obligation to respond with additional affidavits or other evidence. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607 (11th Cir.1991).

---

**2.** The Court should reiterate that, before the accident, Mr. Freeman last bought propane on

or about January 17, 1989.

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court faced a unique factual situation. In that case neither party could prove affirmatively or negatively that Plaintiff's decedent had been exposed to Celotex's products. The Court held that, in such a situation, the moving party had satisfied its burden of showing no genuine issue of material fact by pointing out that the Plaintiff "had failed to identify, in answering interrogatories specifically requesting such information, any witness who could testify about decedent's exposure to [Celotex's] asbestos products." 477 U.S. at 320, 106 S.Ct. at 2551.

■ As noted by our circuit court, trial courts have frequently misinterpreted the meaning of *Celotex. Clark,* 929 F.2d at 608 n. 8. Many courts, and attorneys, have operated on the mistaken assumption that *Celotex* mandates summary judgment whenever a party cannot sustain its burden of proof on an element essential to its case. While this may be true in some instances, it is not the entire analysis. The circuit court requires the trial court first to analyze whether the moving party has identified " 'those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrated the absence of a genuine issue of material fact.' " 929 F.2d at 608 (*quoting Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553). Only if the moving party has satisfied this threshold inquiry does the court have to examine the arguments and supporting evidence provided by plaintiff.

With this standard in mind, the Court will now turn to the merits of the various motions for summary judgment.

## DISCUSSION

*A. The Learned or Informed Intermediary Defense* [3]

■ A supplier or manufacturer has a duty to warn ultimate consumers of the risks attendant with the use of a dangerous product. *Beam v. Omark Ind., Inc.,* 143 Ga.App. 142, 237 S.E.2d 607, 611 (1977). This duty may be discharged if the supplier either actually warns the consumer or if the retailer knows of the product's dangers. *Stuckey v. Northern Propane Gas Co.,* 874 F.2d 1563, 1568 (11th Cir.1989).

■ Comment N to § 388 of the Restatement (Second) of Torts provides five factors that must be balanced in determining whether a supplier may reasonably rely on the intermediary's knowledge regarding the potential risks of a given product. As summarized by the court in *Stuckey,* these are:

1) The burden of requiring a warning;
2) The likelihood that the intermediary will provide a warning;
3) The likely efficacy of such a warning;
4) The degree of danger posed by the absence of a warning; and
5) The nature of the potential harm.

*Stuckey,* 874 F.2d at 1568. However, a condition precedent to applying these factors is the retailer's actual knowledge of the risks of odor fade. *Id.* at 1569.

■ Whether Petrolane or Mobil provided warnings to United Cities is immaterial. "Comment n's analysis of a supplier's duty to warn a consumer *does not turn on whether a warning was actually given to an intermediary,* but on whether the intermediary's knowledge was sufficient to protect the consumer." *Stuckey,* 874 F.2d at 1568 (emphasis added). The issue as the circuit court saw it is whether there was actual knowledge on the part of the intermediary sufficient to raise a presumption that the intermediary would warn the ultimate consumer. Only in the instance where the intermediary has *actual knowledge* may the supplier's duty to warn the *consumer* be discharged. Actual knowledge of the risk of danger is a condition precedent to applying the balance in comment N to § 388. *Id.* at 1569.

---

**3.** The Court's reading of the law is that this defense is available to defendants in *negligence* actions. This reading is reinforced by the fact that Defendants Petrolane and Mobil have moved separately for summary judgment on the issue of strict liability. Therefore, this portion of the order will only discuss summary judgment for the movants as to the negligence count of Plaintiff's complaint.

That the United Cities companies[4] actually knew of the dangers of odor fade in propane is a condition precedent to applying the balance from comment N. Mobil and Petrolane have met their burden of showing that there is no dispute about what UCPG was told regarding the danger of odor fade. United Cities was expressly warned by Petrolane regarding the potential for odor fade. Every bill of lading from Dixie (the pipeline) contained a bold print warning of the dangers of odor fade in propane. These warnings began appearing in May 1988, some 10 months before the explosion that injured Mr. Freeman. It is clear that United Cities had notice about odor fade.

The United Cities Companies deny having actual knowledge of the risk of danger from odor fade. They contend that while they may have had notice that there was a problem with ethyl mercaptan and its losing its efficacy as a safety device, they had no "actual knowledge" of the causes of odor fade, nor of the actual risk that odor fade would occur. What one party knew or did not know is a question for the jury to determine. Even if the court were to determine that, as a matter of law, UCPG had actual knowledge of the danger of odor fade, that finding would not dispose of the learned intermediary defense. Actual knowledge is merely the first step in applying the analysis required by the court in *Stuckey.*

The circuit court has directed that a proper jury instruction regarding the learned intermediary defense has three prongs. *Stuckey,* 874 F.2d at 1571. Mobil and Petrolane have only questionably satisfied the first one. The other two are significantly more problematic and, in the Court's opinion, require jury resolution.

Mobil and Petrolane argue that it did not have a practical and effective means to warn Plaintiff about odor fade because it sold its product in bulk. They had no containers in which to place warnings. *See Walker v. Merck & Co.,* 648 F.Supp. 931,

934 (M.D.Ga.1986). They had no way of knowing who the ultimate consumer would be. In fact, neither Mobil nor Petrolane had contact with the actual consumer.

The argument put forward by these Defendants ignores two very easy alternatives that would have satisfied its duty to warn Mr. Freeman. First, they could have contracted with the intermediary to require the retailer to warn its consumers. *See, e.g., Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.) *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). In the alternative, they could have furnished United Cities with a large warning sign that contained the necessary information and instructed United Cities to place the sign in a prominent place where the consumer would be sure to see it.

What Mobil or Petrolane could have done is relevant, and important, because the standard requires *"no* practical and effective means" to warn. *Stuckey,* 874 F.2d at 1571 (emphasis added). All that Plaintiff must prove to prevail under this part of the instruction is the existence of one alternative that is both practical and effective. The evidence in the record is open to sufficiently different interpretations to create a genuine issue of material fact on this issue.

The third prong of the instruction requires that "the degree of danger posed by a lack of warning [be] extreme." *Stuckey,* 874 F.2d at 1571. This is absolutely a fact question. Even with the tempering of the risk required by the circuit court, it is for the jury to decide what risk the lack of a warning created. *Id.* at 1571 n. 8.

Neither Petrolane nor Mobil has presented evidence, or pointed to anywhere in the record, that demonstrates that there is no genuine issue of material fact on the risk of danger issue. Summary judgment is inappropriate where the moving party has failed in its burden to show the lack of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607

---

**4.** The court is cognizant of the differences between UCPG and UCGC in terms of corporate structure and sale of propane. The fact remains that UCPG is a subsidiary of UCGC and that UCGC is responsible for training UCPG employees on the proper handling of propane. The Court finds it appropriate to lump the two corporations together for purposes of determining what was known or told to them regarding the latent dangers of propane.

(11th Cir.1991). Plaintiff has alleged that the risk of harm absent warnings is extreme. Aside from simply denying this allegation in its answer, the Defendants have directed the court to no evidence in the record that refutes this charge, nor to any deficiency in the record that precludes Plaintiff from proving the allegation. Accordingly, Petrolane and Mobil have failed to meet their burden on this element of the case.

Implied in the court's opinion in *Stuckey* is a public policy concern. Propane is a product that cannot be made absolutely safe. Apparently, both the circuit court and the drafters of the *Restatement* believe that even if an intermediary knows, or should know, of the dangerous propensities of a product, it is still incumbent on the upstream supplier to exhaust all reasonable alternatives of warning the ultimate consumer. This conclusion is based on the fact that there are two additional prongs to the circuit's jury instruction and the fact that actual knowledge is a condition precedent to applying the balancing factors in comment n. The court's policy conclusion does not make the supplier or manufacturer an insurer. *See Walker v. Merck & Co.,* 648 F.Supp. 931, 933 (M.D.Ga.1986). It may, however, require an upstream supplier to take some affirmative action to warn consumers of possible hidden dangers in the use of propane. But the resolution of that question is for a jury.

It is important to note that the suppliers have the burden of proof on this issue. It is, after all, an affirmative defense to the assertion that Mobil and Petrolane failed to warn Mr. Freeman. *See Little v. Liquid Air Corp.,* 952 F.2d 841 (5th Cir.1992). For summary judgment to be appropriate on this issue, Mobil and Petrolane, "must demonstrate that the evidence in the record so conclusively establishes each element of the [learned intermediary] doctrine that there is no genuine issue of material fact." *Id.* at 851.[5]

Accordingly, Petrolane and Mobil's motions for summary judgment on the negligence count are DENIED.

## B. Strict Liability for Manufacturers

■ All of the Defendants to this action have moved this court for summary judgment on the strict liability count in Plaintiff's complaint. The basis for each motion is that the particular defendant is not a manufacturer. O.C.G.A. § 51–1–11 (Supp. 1992). Under Georgia law an entity may be a manufacturer if it satisfies one of three alternative definitions, *Morgan v. Mar–Bel, Inc.,* 614 F.Supp. 438 (N.D.Ga. 1985):

a) an actual manufacturer or designer of the product; or

b) a manufacturer of a component part which failed and caused the plaintiff injury; or

c) an assembler of component parts who then sells the item as a single product under its own trade name.

*Morgan,* 614 F.Supp. at 440. The arguments of the defendants address each of these alternative definitions. The only two that the Court need address are a) and c) because those are the ones argued by Plaintiff.

### 1. The United Cities Defendants

The United Cities Defendants argue vehemently that they do not fit any of the three categories of manufacturer in Georgia and thus cannot be strictly liable for injuries resulting from a product it sells.

In their briefs, both Plaintiffs and Defendants have failed to address O.C.G.A. § 51–1–11.1 (Supp.1992). This section of the Georgia Code was enacted as part of the Tort Reform Act of 1987. A close reading of the "manufacturer cases" reveals that the General Assembly chose its verbs carefully in an attempt to reverse those cases interpreting the former statute with which the Assembly disagreed.

■ Particularly important in this case is the verb "labels" in the statute. Under the

---

**5.** This Court is aware that the United States Court of Appeals for the Fifth Circuit has, on its own motion, decided to rehear this case *en banc.* Because this case is no more than persuasive authority, this Court chooses to adopt this language in any case.

former law, an entity that labeled and marketed a product as its own was a manufacturer. *Rhodes v. Interstate Battery System, Inc.*, 722 F.2d 1517, 1520 (11th Cir. 1984); *Moody v. Sears, Roebuck & Co.*, 324 F.Supp. 844 (S.D.Ga.1971). The General Assembly has now enacted a statute that eliminates this type of "manufacturer" from strict liability under Georgia law.

Plaintiff's argument in response to the motions of these Defendants is that they are "ostensible manufacturers," conceding that the United Cities defendants do not meet the other categories of manufacturer. (*See* Plaintiff's Brief in Opposition to Motion of Mobil Oil Corporation for Partial Summary Judgment on Plaintiff's Strict Liability Claim at 9 n. 4). Since the General Assembly has now eliminated the category of "ostensible manufacturer," this argument is without merit.

The Court reads O.C.G.A. § 51-1-11.1 as a legislative attempt to confine strict liability to actual manufacturers—those entities that have an active role in the production, design, or assembly of products and placing them in the stream of commerce. The verbs chosen by the General Assembly indicate a desire and intent to overrule those cases that had created a broad category of entities that had no real role in the creation of products. The court further finds that as a result of O.C.G.A. § 51-1-11.1 the category of "ostensible manufacturer" no longer exists in Georgia.

Accordingly, the motions of United Cities Gas Company and United Cities Propane Gas of Georgia for partial summary judgment on the issue of strict liability are GRANTED.

### 2. Mobil Oil and Petrolane

Plaintiff goes to great length to characterize the defendants as manufacturers under Georgia law. He argues that Mobil and Petrolane both designed the product[6] and sold an assembled product under its trade name,[7] thus making Mobil and Petro-

lane manufacturers in two different ways in Georgia. Since these two defendants are similarly situated with respect to the distribution and odorization of propane the court will analyze them together.

#### a. The "Assembler" Definition

The Court concludes that neither of these Defendants are manufacturers under an "assembler" definition of manufacturer in Georgia. Neither Defendant marketed the product under any type of trade name.

Propane is essentially a fungible good. What Petrolane sells as propane is the same product that Mobil sells as propane. It is not like gasoline where various companies place additives in the product in an attempt to distinguish their brand from other very similar brands. This is evidenced by the fact that distributors of propane commingle their stock in a huge storage tank in Hattiesburg, Mississippi. Retailers are charged by the suppliers based on a formula that determines how much of whose propane is in the Hattiesburg tank when a shipment is made across the pipeline to a terminal. The proportion of propane in the tank in Mississippi is also the proportion of that company's propane in a given shipment.

No representation is made by either supplier that this is Petrolane propane or Mobil propane. The contract for sale between Petrolane and UCPG provides that the product traded is generic propane. There are no warranties made concerning the quality of the propane except that the propane will be of the usual quality provided by Petrolane's suppliers. Mobil's contract for sale is virtually the same in this respect.

Since neither Mobil nor Petrolane marketed the propane they sold to UCPG under their trade name, neither Defendant could be a manufacturer under the "assembler of component parts" definition. Plaintiff can point to no evidence in the record that

---

**6.** "It was Mobil's sole decision on how the product (lp-gas odorized with ethyl mercaptan) was designed." Plaintiff's Brief in Opposition to Motion of Mobil Oil Corporation for Partial Summary Judgment on Plaintiff's Strict Liability Claim at 7.

**7.** Plaintiff's Brief in Opposition to Motion of Mobil Oil Corporation for Partial Summary Judgment on Plaintiff's Strict Liability Claim at 9–12.

would enable a reasonable juror to reach a contrary conclusion. These Defendants are simply not manufacturers under the "assembler" definition.

### b. The "Designer" Definition

■ Nor are Mobil or Petrolane manufacturers under the "designer" definition. Georgia law requires propane be detectible by smell at a level ⅕ the lower limit of combustibility. Nearly 95% of the propane sold in this country is odorized with ethyl mercaptan. Ethyl mercaptan is recognized by the Georgia Regulation as an effective odorant for propane. Dixie offers, under the terms of its tariff, to odorize propane at a concentration half again as strong as recommended in the regulation. Thus the specifications of the odorized propane are either legally required or are proposed and carried out by Dixie. Mobil and Petrolane exercise little input regarding the nature of the resulting odorized propane.

The odorization of the propane by Dixie is not at the direction of either Mobil or Petrolane. Neither supplier contracts with Dixie to require the odorant be added on its behalf. Dixie buys the ethyl mercaptan from various suppliers. Its automatic injection system odorizes the propane as the propane is loaded onto a truck for delivery to United Cities or some other purchaser. Dixie is merely performing a service for its shippers to ensure that the propane is odorized before it is sold to the consumer.

Dixie is not acting as an agent for either Mobil or Petrolane in odorizing the propane. Title to the ethyl mercaptan is never in the hands of Mobil or Petrolane. They are charged for the addition of the odorant to the propane—which they then pass on to their customer, of course. There is not a sufficient contractual or other basis to hold Mobil and Petrolane accountable for the odorization of the propane by Dixie.

The argument asserted by Plaintiff in the action now before this Court, is strikingly similar to that rejected by Judge Tidwell in *Morgan v. Mar–Bel, Inc.*, 614 F.Supp. 438 (N.D.Ga.1985). Mr. Freeman is essentially arguing that " 'when a firm prescribes and controls the specifications and quality standards of an item constructed by another it is a manufacturer.' "

*Mar–Bel*, 614 F.Supp. at 441 (quoting *Carter v. Joseph Bancroft & Sons Co.*, 360 F.Supp. 1103, 1107 (E.D.Pa.1973)). As the court put in *Mar–Bel*:

> The plaintiff has not referred the court to any binding authority that would suggest Georgia has or would adopt this precept. Absent some indication that the Georgia courts would accept such an expansive reading of the term "manufacturer" this court will not do so, especially since § 51–1–11 is to be strictly construed.

614 F.Supp. at 441 (citations omitted).

The Court finds that there is no genuine issue of material fact regarding the status of Mobil or Petrolane as manufacturers. They are not. Plaintiff has not convinced the Court that on these undisputed facts a jury would, or could, reach a contrary conclusion.

The motions of Petrolane and Mobil for summary judgment on the issue of strict liability are GRANTED.

### C. Punitive Damages

All four defendants have moved for summary judgment on the issue of punitive damages. Plaintiff must prove by "clear and convincing evidence" that the defendant's conduct or omission demonstrated that "entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b) (Supp.1992). The basis of all four motions is that Plaintiff cannot carry his burden of proof at trial to support an award of punitive damages.

### 1. Punitive Damages as to Petrolane and Mobil Oil and United Cities Gas Company

■ The two supplier defendants and the parent company of the retail seller have moved for summary judgment on Plaintiff's claim for punitive damages. As noted above, Plaintiff must prove by clear and convincing evidence that the defendant acted with conscious disregard of the consequences of his actions. These three defendants have satisfied their burden of demonstrating a lack of genuine issue of material facts.

It is, therefore, incumbent on Plaintiff to show that genuine issues of material fact exist. Taking the evidence in the light most favorable to Mr. Freeman, this Court finds there is insufficient evidence in the record to sustain Plaintiff's burden under O.C.G.A. § 51–12–5.1.

Plaintiff argues that he ought to be allowed to present his evidence at trial and have a jury determine whether the warnings and information given the retailer were so grossly inadequate to show a conscious disregard of the consequences of the conduct of these Defendants. Plaintiff misapprehends the standard of conduct that will subject a defendant to punitive damages. Even gross negligence will not suffice to support an award of punitive damages. *BLI Construction Co. v. Debari,* 135 Ga.App. 299, 302, 217 S.E.2d 426, 428 (1975). There is simply no evidence in the record to support a finding that UCGC, Petrolane or Mobil acted with anything approaching the level of culpable conduct that would entitle Plaintiff to an award of punitive damages. At most these Defendants were grossly negligent. There is simply no evidence in the record that would support a different conclusion.

UCGC, Mobil and Petrolane's motions for summary judgment on the issue of punitive damages are GRANTED.

### 2. Punitive Damages Against United Cities Propane Gas

The Court is unwilling to resolve this issue at this time. It appears from the record that of the United Cities defendants, UCPG took no action to warn any of their consumers regarding the dangers, or potential dangers, of propane. The Court will carry the motion for punitive damages through trial and rule on it once the evidence is closed. The parties are directed to remind the court of this issue before the charge conference.

### 3. An Action Arising Out of Products Liability

United Cities Propane Gas has also moved for a ruling that any punitive damages awarded against it are capped at $250,000 under O.C.G.A. § 51–12–5.1(f)

(Supp.1992). This code section limits punitive damages awards for torts that do not arise out of a products liability action or for torts that are not malicious in some way.

Plaintiff's theories of negligence and breach of an implied warranty both sound in products liability. The Georgia courts have definitively held that the statutory implied warranty is not a contractual obligation. *Firestone Tire & Rubber Co. v. Jackson Transp. Co.,* 126 Ga.App. 471, 191 S.E.2d 110 (1972). The breach of an *implied* warranty is the retail seller's equivalent of strict liability in tort. *Wood v. Hub Motor Co.,* 110 Ga.App. 101, 105, 137 S.E.2d 674, 679 (1964). Defendants effectively concede that punitive damages are available in strict liability. Since the two causes of action are analogous, unlimited punitive damages are available to a successful plaintiff.

Plaintiff's negligence claim also arises from products liability. Products liability claims in Georgia may proceed under a number of theories, including negligence. *Ogletree v. Navistar Int'l. Transp. Corp.,* 194 Ga.App. 41, 390 S.E.2d 61, 65 (1989) (*overruled on other grounds Weatherby v. Honda Motor Co.,* 195 Ga.App. 169, 393 S.E.2d 64, 65 (1990)). Additionally, the statutory language speaks of recovery if the "acts or omissions" of the defendant are sufficiently culpable. As Plaintiff correctly points out, these words refer to the inquiry in a negligence action where the *conduct* of the defendant is at issue.

The Court finds that Plaintiff's cause of action "arises from product liability." O.C.G.A. § 51–12–5.1(e) (Supp.1992). United Cities Propane Gas has provided no support for its contention that neither breach of an implied warranty, nor negligent handling of a dangerous product arise from product liability. The statutory language of the Georgia Code supports the Court's conclusion, as does Georgia common law. There is no limit to an award of punitive damages if a jury should find such an award appropriate.

### CONCLUSION

Petrolane's motion for summary judgment on the negligence count is DENIED.

Mobil's motion for summary judgment on the same count is also DENIED.

The motions of all Defendants on the issue of strict liability are GRANTED.

The motions of United Cities Gas Company, Mobil, and Petrolane on the issue of punitive damages are GRANTED.

The summary judgment motion of United Cities Propane Gas on the punitive damages issue is taken under advisement and an ruling on them will be entered at the close of the evidence.

The motion of United Cities Propane Gas to cap at $250,000 any punitive damages awarded is DENIED.

The parties are directed to inform the court what additional motions are currently pending or that they intend to file before trial. *All* motions shall be submitted to the court by Friday, December 11, 1992. Responses to motions shall be filed with the court by Monday, December 21st.

SO ORDERED.